IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH GRANT, | 2:06-cv-02842-RCT |
| Petitioner, | |
| v. | |
| G. SWARTHOUT, et al., | |
| Respondents. | MEMORANDUM DECISION AND ORDER |

This matter comes before the Court on inmate Ralph Grant's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## INTRODUCTION

Petitioner Grant is a state prisoner currently incarcerated at the California State Prison, Solano, in Vacaville, California.[1]  He filed this petition for a writ of habeas corpus to challenge the California Board of Parole Hearings' ("Board") 2005 decision finding him unsuitable for parole.  A review of the record demonstrates that the 2006 decision of the Los Angeles County Superior Court rejecting Grant's claims was neither contrary to nor an unreasonable application of United States Supreme Court precedent.  *Id.* § 2254(d).  Accordingly, the petition is

---

[1]  Pursuant to the change in wardens at the California State Prison, Solano, the Clerk is directed to change the case caption from D.K. Sisto to G. Swarthout.

DENIED and the case is DISMISSED with prejudice.

## PROCEDURAL AND FACTUAL HISTORY

Grant is currently serving a sentence of seven years to life for kidnapping for robbery. The Los Angeles County Superior Court summarized the facts of this case as follows:

> [O]n June 15, 1989, the victim was driving home alone after dropping her sister off when her front left tire went flat. Petitioner approached the victim as she was walking back to her sister's home and asked her if she wanted a ride. She refused and petitioner drove away. Petitioner returned with two juveniles in another vehicle and surrounded the victim, forced her into his car and drove her around for approximately 20 minutes before arriving at her car, where the two juveniles and petitioner changed the flat tire. Petitioner drove around for another 20 minutes, parked the car and then fondled the victim's breasts and attempted to place his hand inside her shorts, which the victim successfully resisted. Petitioner then drove to a gas station and filled his tank with several credit cards taken from [the] victim's purse. Later, while the vehicle was in transit, a police officer who noticed the victim signaling for help stopped the petitioner and recovered [the] victim's credit cards and watch from petitioner's pockets.

(Pet. for Writ of Habeas Corpus (#2) Exhibit M at 1–2.)

A Los Angeles County jury convicted Grant of kidnapping for robbery in violation of California Penal Code section 209, kidnapping in violation of California Penal Code section 207, and false imprisonment by violence in violation of California Penal Code section 236. (Pet. for Writ of Habeas Corpus (#2) Exhibit H at 5.)[2] He was sentenced to seven years to life for the kidnapping for robbery and to a term of sixteen years for the remaining counts. (*Id.*) The sixteen year term was stayed. (*Id.*) The convictions for kidnapping and false imprisonment appear to have been reversed on appeal. (Traverse (#13) Exhibit C.) Pursuant to his remaining sentence of seven years to life, Grant's minimum eligible parole date was January 3, 1996. (Pet. for Writ of Habeas Corpus (#2) Exhibit M at 1.)

On June 23, 2005, Grant appeared before the Board for parole consideration, and was

---

[2] The conviction information is drawn from a Psychosocial Assessment of Grant performed December 14, 2004, because the State provided an Abstract of Judgment for Timothy Antoine Miller. (Answer (#10) Exhibit 1.) It appears from the record that Miller and Grant are the same person, however, the difference in names is never explained by Grant or by the State. (*See* Traverse (#13) Exhibit C, containing a direct appeal by Miller describing the facts of Grant's crime.)

1  denied parole for the seventh time. (Pet. for Writ of Habeas Corpus (#2) Exhibit J.) On March
2  20, 2006, Grant filed a Petition for Writ of Habeas Corpus in the Los Angeles County Superior
3  Court. (Pet. for Writ of Habeas Corpus (#2) Exhibit M at 1.) The Superior Court denied the
4  petition, finding that the Board's decision was based on both the commitment offense and
5  several additional factors, and that the decision was supported by "some evidence," as required
6  by California law. (*Id.*)

7  In an unpublished decision, the California Court of Appeal for the Second Appellate
8  District affirmed the Superior Court's order on June 27, 2006. (Pet. for Writ of Habeas Corpus
9  (#2) Exhibit N.) The court cited *In re Dannenberg*, 104 P.3d 783 (Cal. 2005), and *In re*
10 *Rosenkrantz*, 59 P.3d 174 (Cal. 2002). (*Id.*) Grant thereafter filed a petition for review in the
11 California Supreme Court, which was denied on October 18, 2006, without comment or citation
12 to authority. (Pet. for Writ of Habeas Corpus (#2) Exhibit O.)

13 On December 15, 2006, Grant filed this federal petition for a writ of habeas corpus.
14 Respondents concede that Grant's claims relating to the Board's 2005 parole denial have been
15 fully exhausted and are properly before this Court.

16                                             CLAIMS
17 Grant raises the following claims in his petition:
18     1. The Board's 2005 parole denial violated Grant's federal due process rights.
19     2. Grant's sentence of seven years to life violates California Penal Code sections 12 and
20 13.
21     3. The Board's 2005 parole denial violated Grant's Eighth Amendment right to be free
22 from cruel and unusual punishment by creating a de facto life sentence without possibility of
23 parole.

24                                        LEGAL STANDARD
25 In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
26 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which established that a
27 federal habeas corpus petition shall not be granted with respect to any claim adjudicated on the
28 merits in the state courts unless the adjudication either: (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court]'s decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

Under AEDPA, federal courts review the "last reasoned decision" of the state courts. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Because the California Supreme Court denied Grant's petition for review without comment or citation to authority, and the California Court of Appeal merely cited two California cases, the Court will here review the written memorandum decision of the Los Angeles County Superior Court.

## DISCUSSION

*I.     Due Process in Denial of Parole*

Grant characterizes this claim in various ways:  (1) right to due process, (Pet. for Writ of Habeas Corpus (#2) at 9–17, 35–37); (2) right to a fair hearing, (*id.* at 18–23); (3) denial of parole created a de facto sentence of life without the possibility of parole (*id.* at 23–27); and (4) vagueness of reasons for denial (*id.* at 32–35).  Essentially, he is arguing that the Board's 2005 denial violated his federal right to due process because he was improperly deprived of his state-created liberty interest in parole.

*A.     Legal Standard*

In general, parties claiming that their due process rights were violated must establish "two distinct elements:  (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *McQuillion v. Duncan*, 306 F.3d

895, 900 (9th Cir. 2002) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause."[3] *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987) (internal citation omitted). If such a liberty interest is created by state law, the state must provide the inmate with an opportunity to be heard and an explanation of why parole is being denied. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 16 (1979).

B.  Due Process

There is no United States Supreme Court precedent deciding whether California's parole scheme creates the required liberty interest and it is unnecessary to make that determination here. Instead, this Court will examine Grant's claims under two alternate theories: (1) whether Grant received all the process he was due, assuming California law creates a liberty interest in parole; and (2) whether, following *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc), any liberty interest was improperly denied under California law. Because the answer to both questions is "no," the Court need not determine which method is proper under Ninth Circuit precedent.

1.  *Liberty Interest Assumed*

California Penal Code section 3041 states that the Board of Parole Hearings

> shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

---

[3] The Ninth Circuit's recent en banc decision in *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc), clarified that there is no constitutional right to "release on parole, or to release in the absence of some evidence of future dangerousness" arising directly from the Due Process Clause of the federal constitution; instead, any such right "has to arise from substantive state law creating a right to release." *Id.* at 555. *Hayward* thus overruled *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), and *Irons v. Carey*, 505 F.3d 846 (9th Cir.2007), to the extent they "might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release." *Id.*

Cal. Penal Code § 3041(b).  In addition, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  Cal. Code Regs. tit. 15, § 2402(a).  For the purpose of this case, the Court assumes that California Penal Code section 3041 creates a liberty interest recognized under the federal Due Process Clause.

Under clearly established United States Supreme Court precedent, due process requires that the state provide an inmate with an opportunity to be heard and an explanation of why parole is being denied.  *Greenholtz*, 442 U.S. at 16.  The state courts did not make any explicit findings regarding what process was due Grant in his parole hearing.  A silent or unreasoned denial by a state court is treated as an adjudication on the merits, and is given the same AEDPA deference as a reasoned state court decision.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  "[W]hen no reasoned state court decision denying a habeas petition exists, the federal court should perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable."  *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (citations and internal quotation marks omitted).

Here, the Los Angeles County Superior Court found that the Board "conducted a . . . parole suitability hearing on June 23, 2005."  (Pet. for Writ of Habeas Corpus (#2) Exhibit M at 2.)  Grant provided the Court with a sixty-four page transcript of the parole hearing, which he attended, and at which he was represented by counsel and invited to speak on his own behalf. (Pet. for Writ of Habeas Corpus (#2) Exhibit J.)  Thus, Grant was afforded an opportunity to be heard, as required by clearly established federal law.  *Greenholtz*, 442 U.S. at 14–16 (holding that the Nebraska parole process, which provided for a personal interview with the inmate where the inmate is permitted to present letters and statements on his own behalf, comported with due process).  That same hearing transcript contains an eight page explanation for why the Board denied Grant's parole.  (Pet. for Writ of Habeas Corpus (#2) Exhibit J. at 57–64.)  This appears similar to the process in Nebraska, under which the Board "communicates the reason for its denial as a guide to the inmate for his future behavior."  *Greenholtz*, 442 U.S. at 15.  "The Constitution does not require more."  *Id.* at 16.  Therefore, the California courts' decisions were

1  not contrary to United States Supreme Court precedent when they rejected Grant's state habeas
2  petitions. *See* 28 U.S.C. § 2254(d).

   2.  *California Law*

4  Grant contends that the Board improperly relied on his offense of conviction in denying
5  his parole, rather than finding affirmative evidence of his future dangerousness as required by
6  California law. The *Hayward* court instructs that "courts in this circuit facing [this] issue in the
7  future, need only decide whether the California judicial decision approving . . . [the rejection of]
8  parole was an unreasonable application of the California some evidence requirement, or was
9  based on an unreasonable determination of the facts in light of the evidence." 603 F.3d at
10 562–63 (internal quotation marks and citation omitted). In other words, if Grant is not entitled
11 to parole under California law, he cannot have been deprived of his state-created liberty interest,
12 and no federal due process claim can go forward.

13 Under California law, "the paramount consideration . . . under the governing [parole]
14 statutes is whether the inmate currently poses a threat to public safety." *Id.* at 562 (quoting *In re*
15 *Lawrence*, 190 P.3d 535, 552 (Cal. 2008)). "There must be 'some evidence' of such a threat, and
16 an aggravated offense 'does not, in every case, provide evidence that the inmate is a current
17 threat to public safety.'" *Id.* (quoting *Lawrence*, 190 P.3d at 554). By analogy, the "some
18 evidence" standard in prison disciplinary proceedings is met if there "is any evidence in the
19 record that could support the conclusion reached by the disciplinary board." *Superintendent v.*
20 *Hill*, 472 U.S. 445, 455–56 (1985). "The prisoner's aggravated offense does not establish
21 current dangerousness 'unless the record also establishes that something in the prisoner's pre- or
22 post-incarceration history, or his or her current demeanor and mental state' supports the
23 inference of dangerousness." *Hayward*, 603 F.3d at 562 (quoting *Lawrence*, 190 P.3d at 555).
24 "Thus, in California, the offense of conviction may be considered, but the consideration must
25 address the determining factor, 'a current threat to public safety.'" *Id.* (quoting *Lawrence*, 190
26 P.3d at 539).

27 In this case, the Board listed the following reasons for its decision denying early release:
28 that (1) "the offense was carried [out] in a[n especially] cruel and vicious manner . . . [that]

demonstrated a callous disregard for human suffering;" (2) Grant had previously attempted to inflict serious injury on prior victims; (3) Grant had failed "to profit from society's previous attempts to correct his criminality, . . . includ[ing] county jail, prior prison terms and parole," had absconded from previous grants of parole on several occasions, and had committed the offense for which he is currently incarcerated while on parole; (4) prior to 1995 Grant had several disciplinary reports related to his behavior in prison; (5) Grant's abuse of drugs was related to the offense of conviction but he "has not been involved in AA or NA continuously" while he has been in prison; and (6) Grant's plan to live with his sister, a convicted felon, was not "a viable residential plan," and was not supported by a letter from the sister. (Pet. for Writ of Habeas Corpus (#2) Exhibit J at 57–62.)

The Los Angeles County Superior Court found "that the record supports the Board's finding that the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering—a factor to be considered in finding unsuitability based on the commitment offense." (Pet. for Writ of Habeas Corpus (#2) Exhibit M at 2.) Specifically, the court found that the evidence "exceeds the minimum necessary to sustain a conviction of kidnapping for robbery." (*Id.*)

The court also found "that the Board relied on several additional factors in denying petitioner parole at this time, and there is some evidence to support that decision." (*Id.*) That evidence includes his lengthy criminal history dating back to his childhood, a history of violent behavior toward the victims of his crimes, his poor performance while on prior grants of parole, his recidivism, and his lack of drug treatment for polysubstance abuse which was in institutional remission—all supporting the Board's conclusion that Grant "is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Pet. for Writ of Habeas Corpus (#2) Exhibit J at 57.)

Grant contends that several of the reasons put forward by the Board are based on inaccurate information, including a statement during his parole hearing that he had been convicted of a sex crime and a statement that he had been convicted of homicide. During the parole hearing, it was clarified that the mention of a sex crime in his history was likely a

reference to the crime of conviction, because during the kidnapping he "fondled the victim's breasts and attempted to place his hand inside her shorts, which the victim successfully resisted." (*See* Pet. for Writ of Habeas Corpus (#2) Exhibit J at 30–32.) There was also a mention of "homicide" as a part of Grant's unstable history of criminality. (*Id.* at 60.) It appears unlikely to this Court that Grant was actually convicted of homicide. However, these mistakes or misstatements by members of the Board do not mean that the Board's findings were unsupported by "some evidence."

A state court's "some evidence" findings are findings of fact; such findings may only be reversed by a federal court on habeas review if they are "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(2). The Los Angeles County Superior Court's determination that the Board's decision was based on "some evidence," is not based on an unreasonable determination of the facts. *See id.* Grant did not contest the Board's description of his crime of conviction. Nor did he contest that he had a significant criminal history, which included injury to several victims, or that he had violated his previous grants of parole on multiple occasions. Grant conceded that he had been using several kinds of drugs since he was fourteen years old, and that he had a particular problem with cocaine. (Pet. for Writ of Habeas Corpus (#2) Exhibit J at 16–17.) He also conceded that he had been unable to participate in NA in the last few years because he had apparently fallen asleep during the group sessions and was removed from the group. (*Id.* at 22.) Grant also failed to obtain a letter from his sister indicating that he could live with her if he were granted parole. (*Id.* at 35.) Furthermore, this sister was recently released from prison after her conviction for what he believed was fraud regarding automobile registration. (*Id.* at 45.)

In fact, even under a de novo standard of review, it is quite clear on this record that the Board's determination was supported by "some evidence." *See, e.g.*, *Hayward*, 603 F.3d at 563. Because Grant was not entitled to parole under California law, he was not deprived of a state-created liberty interest. His federal due process claim must, therefore, fail. *See McQuillion*, 306 F.3d at 900.

II.   *Violation of California Law*

Grant contends that his sentence of seven years to life violates California Penal Code sections 12 and 13. (Pet. for Writ of Habeas Corpus (#2) at 27–31.) "[V]iolations of state law are not cognizable on federal habeas review." *Rhoades v. Henry*, 611 F.3d 1133, 1142 (9th Cir. 2010). The Court, therefore, denies Grant's petition on this ground.

### III.     Eighth Amendment

Grant argues that his sentence is so disproportionate to the crime for which he was convicted that it violates the Eighth Amendment's prohibition on cruel and unusual punishment. This argument is primarily based on his contention that the Board's 2005 parole denial has transformed his sentence into a de facto life sentence without the possibility of parole.

#### A.     Legal Standard

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (O'Connor, J., plurality) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996–97 (1991)). However, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003). The Supreme Court has stated that

> a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Solem v. Helm*, 463 U.S. 277, 292 (1983). Applying these criteria here, the Court holds that there is no Eighth Amendment violation shown.

#### B.     Cruel and Unusual Punishment

As a preliminary matter, this Court notes that there is no evidence in the record that the Board's 2005 parole denial constitutes a permanent denial of Grant's parole as he contends. The Board only denied parole for one year and gave Grant specific direction on how to improve his chances for parole the following year. (Pet. for Writ of Habeas Corpus (#2) Exhibit J at 61–64.) Therefore, the Court examines Grant's actual sentence of life with the possibility of parole as the basis for its proportionality analysis. *See People v. Wingo*, 534 P.2d 1001, 1011 (Cal. 1975) ("It

has uniformly been held that the indeterminate sentence is in legal effect a sentence for the maximum term, subject only to the ameliorative power of the [Board] to set a lesser term." (internal citation and quotation marks omitted)).

None of the California courts referenced Grant's Eighth Amendment argument. The warden has not argued procedural default, so this Court considers the merits of Grant's claim. Thus, this Court has conducted an independent review of the record to determine whether the California courts' silent denials of this claim were objectively unreasonable. *See Pham*, 400 F.3d at 742.

First, kidnapping for robbery is an extremely serious offense. *See People v. Laursen*, 501 P.2d 1145, 1149 (Cal. 1972) (stating that the primary purpose of the kidnapping for robbery statute "is to impose harsher criminal sanctions to deter the carrying away of persons during the commission of a robbery in a manner which substantially increases the risk that someone will suffer grave bodily or psychic injury or even death"). The crime here was the concerted act of Grant with the active assistance of two accomplices recruited after he initially contacted the victim alone, who refused his offer of roadside assistance out of fear.

Second, the California legislature has determined that kidnapping for robbery "shall be punished by imprisonment in the state prison for life with the possibility of parole." Cal. Penal Code § 209(b)(1). Thus, Grant received the same sentence as similar offenders in California.

Finally, Grant has presented no evidence that other states impose far shorter sentences to convictions for kidnapping for robbery. Life with the possibility of parole after seven years is simply not a grossly disproportional sentence for such a conviction, particularly in the face of Grant's persistent recidivism involving crimes of violence. *See, e.g.*, *Lockyer*, 538 U.S. 63 (affirming as a reasonable application of clearly established Supreme Court precedent a sentence of two consecutive terms of twenty-five years to life in prison for a third strike offense involving the theft of less than $200 worth of videotapes). Thus, the California state courts' decision were not contrary to Supreme Court precedent when they denied Grant's petition for a writ of habeas corpus. His sentence does not violate the Eighth Amendment.

The Court, therefore, denies Grant's petition on this ground.

1     Therefore, it is hereby

2     **ORDERED** that Grant's petition for a writ of habeas corpus pursuant to 28 U.S.C.
3 § 2254 is **DENIED** and the case is **DISMISSED** with prejudice.

4     The Clerk is directed to enter the accompanying Judgment and to send uncertified copies
5 of this Order and the Judgment to all counsel of record and to any party appearing *pro se* at said
6 party's last known address.

7     DATED this 16th day of September, 2010.

                      /s/ Richard C. Tallman
                      UNITED STATES CIRCUIT JUDGE
                      Sitting by designation